Sikora, Mitchell J., J.
RULING
The court hereby DENIES the application of plaintiff Suffolk Construction Company, Inc., for an affirmative preliminary injunction commanding the defendant Massachusetts Division of Capital Asset Management to produce all documents for which the Division presently claims the privilege of attorney-client communication.
The reasons follow.
REASONING
Introduction
The court has considered in full the verified complaint with all exhibits; the plaintiffs memorandum of law including all attachments; the defendant’s opposition to preliminary injunctive relief, including all attachments; and the plaintiffs reply memorandum including its attachments.
Factual Background
The verified complaint with exhibits, the parties’ memoranda of law with attachments including copies of substantial correspondence, their affidavit material, and their acknowledgments in the memoranda provide the following factual background. The plaintiff Suffolk Construction Company, Inc., served as general contractor for the project of reconstruction, renovation, and refurbishment of the Suffolk County Courthouse during the period 2001 through 2004 (“the Project”). Suffolk Construction, a joint venturer, and 16 subcontractors, performed the renovation and modernization work of the Project. The original contract value approximated $96,320.00.
Suffolk Construction alleges that in the course of the work, its subcontractors and it “encountered enormous amounts of previously unknown or differing site conditions” absent from the drawings, bid package or Project specifications; that these unexpected conditions forced Suffolk Construction to re-engineer and to redesign many aspects of the work; and that they generated substantial extra and differing work, delays, increased costs, and lost productivity. Suffolk Construction alleges further that it submitted requests to the Massachusetts Division of Capital Asset Management (“DCAM”) for change orders and increases in the contract price and time period, including the omnibus proposed change order 704 (“PCO 704”), but that DCAM, its architects, and its consultants evaluated PCO 704 and finally denied it in or about April of2004.
On October 7, 2004, under authority of the Public Records Law, G.L.c. 66, §10 and G.L.c. 4, §7, Suffolk Construction sought to inspect and to review all records upon which DCAM based its denial of PCO 704, including all documents from DCAM and its consultants. The requests were categorical. They included “[a]ll documents that are in the custody of [the] Executive Office of Administration and Finance and/or DCAM which relate to [the consultants] and the Massachusetts State Project [for] Historic Renovation of the Suffolk County Courthouse.” Other requested categories were (1) all documents in the hands of the main consultants, and (2) “[a]ll communications with any entities regarding this request.”
Over the ensuing 11 months DCAM produced documents by an ongoing incremental process. It asserts that it has disclosed more than 500,000 pages of material. By an evolving privilege log, it presently has identified 189 documents for which it asserts exemption from public inspection by reason of their character as privileged communication between attorney and client.
Suffolk Construction has estimated the value of the disputed changes to approximate 52 million dollars. It argues that it “cannot fully and properly defend against” the claims of multiple subcontractors for compensation for labor and materials contributed to the changed and extra renovation work “without the documentation and understanding of DCAM’s denial” of the omnibus PCO 704. Memorandum in support of Preliminary Injunctive Relief at 23-24.
Four days after the commencement of the present action (in August of 2005) for declaratory judgment and injunctive remedies for enforcement of its public records law requests, Suffolk Construction began a separate suit for damages upon the merits of its claims for compensation for the changed and extra Project work.
Standard for Preliminary Injunctive Relief
I have applied the settled criteria for consideration for preliminary injunctive relief set out in the leading precedent of Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 616-22 (1980). Under those criteria, an applicant for preliminary injunctive relief must demonstrate (a) a likelihood of success upon the ultimate legal merits of its claim; (b) the threat or presence of actionable or inequitable irreparable harm in the absence of preliminary injunctive assistance; (c) the absence or the lesser degree of harm to the opposing party from the imposition of the requested preliminary injunction; and (d) the significance of a public interest, if any is present in the circumstances of the dispute. The court must consider these criteria in combination and not in isolation. In the assessment of any harm, detriment, or burden, the court must always ask whether those consequences are actionable or inequitable in light of the governing law of the circumstances. “What matters as to each party is not the raw amount of irreparable harm the party might conceivably suffer, but rather the risk of such harm in light of the party’s chance of success on the merits. Only where the balance between these risks cuts in favor of the moving party, may a preliminary injunc *298 tion properly issue.” Packaging Industries Group, Inc., 380 Mass. at 617.
I will analyze the parties’ factual and legal submissions under each of these criteria in turn.
I. The Merits
Suffolk Construction argues vigorously and extensively that the disclosure requirements of the Public Records Law comprised of G.L.c. 66, §10 and G.L.c. 4, §7, eliminate the shield of the attorney-client privilege for all records “made or received by any officer or employee of any agency... of the commonwealth ...” G.L.c. 4, §7, Twenty-sixth. It reasons that only an explicit, enumerated exemption within Clause Twenty-sixth will except such a document from mandatory disclosure as a public record. No such explicit exemption appears for the attorney-client privilege. In particular, Suffolk Construction emphasizes the decision and reasoning of General Electric Company v. Department of Environmental Protection, 429 Mass. 798, 801-06 (1999). In General Electric the Supreme Judicial Court concluded that no implied exemption from the public records law existed for attorney work product material (a) because that category did not appear among the enumerated statutory exceptions, and (b) because at one point in the legislative history of the public records enactment the Legislature had specifically removed that category from the enumerated exemptions. Consequently, both the letter and the history of the public records legislation militated against such an exemption. Suffolk reasons that the same grounds should extend to preempt an exemption for attorney-client communications in records made or received by an agency or by its officers.
The defendant Division (“DCAM”) points out that no appellate decision has yet gone so far as to consider or to reach that conclusion; and that no comparable legislative history indicates conscious abrogation of the attorney-client privilege by the Legislature. Several Superior Court decisions have, with some reluctance or ambivalence, concluded that the public records law requirements remove the attorney-client privilege. Lafferty v. Martha’s Vineyard Commission, 17 Mass. L. Rptr. 501, 2004 W.L. 792712 (Mass.Super. 2004); Kent v. Commonwealth, 12 Mass. L. Rptr. 165, 2000 W.L. 1473124 (Mass.Super. 2000); and Schaub v. Town of Clinton, Suffolk Superior Court CA 02-5066 (preliminary injunction decision of January 3, 2003). At the same time, another Superior Court Justice has concluded that the history and strength of the attorney-client privilege and the absence of any explicit appellate decision warranted a report of the issue to the appellate courts. Kiewit-Atkinson-Kenny, Joint Venture v. Massachusetts Water Resources Authority, 2002 W.L. 2017107 (Mass. Super. 2002), 15 Mass. L. Rptr. 101 (van Gestel, J.).
I acknowledge the value of the General Electric reasoning to the contention of Suffolk Construction. The work product doctrine is analogous to the attorney-client privilege. It may be a lesser included element of the privilege. However, as DCAM argues and as Justice van Gestel observed in the Kiewit-AtkinsonKenny decision, the privilege is ancient, powerful, and socially useful to the function of litigation as the mechanism for the peaceful resolution of disputes. The withdrawal of it from any party or client is extraordinary. I concur with Justice van Gestel that it should come from explicit legislation or unmistakable appellate decision.
Also, with regard to the merits, a latent issue may require some attention. Neither side has raised or briefed it to this point. The issue is whether, as applied in these circumstances or as written generally, the public records law would intrude so deeply into vital operations of an agency in the executive branch of government as to violate the principle of the separation of powers embodied in Article 30 of the Declaration of Rights of the Massachusetts Constitution. In other words, can the Legislature constitutionally deprive the agencies and officers of the executive branch of state government of the confidentiality of all tangible communications with their attorneys (both inside and outside the government) upon all matters of official business outside the boundaries of formal litigation?
That ramification arises from the position asserted by Suffolk Construction under the language of the public records law and under the analysis of the General Electric decision. The implication is sweeping. It would no doubt come as a shock to many government officers to learn that memoranda of legal advice upon sensitive issues from internal counsel or from outside counsel are mandatorily public. One must wonder, also, about the impact upon the quality of legal advice within the executive branch as a result of such exposure. Would counsel record their full, honest, and uninhibited advice to officers and agencies? Would public records exposure extend to communications between the lawyers of the Department of the Attorney General and various client agencies and officers made in anticipation of litigation? Would such exposure unfairly handicap the governmental client and its avowed pursuit of a public interest in subsequent litigation? The constitutional question of separation of powers may warrant very serious attention for a comprehensive resolution of this issue.
In sum, the merits are indeterminate. One could reasonably assess a probability in favor of Suffolk Construction on the basis of the General Electric analysis. However, the injunction judge must factor that probability into combination with the other criteria.
II. Irreparable Harm
Suffolk Construction has described the presence or risk of irreparable harm as a litigation disadvantage. “Without üie documentation and understanding of DCAM’s denial [of its comprehensive Change Order], Suffolk cannot fully and properly defend against . . . subcontractor claims and [it] risks judgment and *299 awards in favor of [those] subcontractors for monies otherwise not owing according to DCAM and its apparent denials. Such risk constitutes an immediate and irreparable harm that will be suffered by Suffolk for which it is entitled to injunctive relief, ordering DCAM to produce the requested and withheld records.” Injunction Memorandum at 23-24.
In other words, Suffolk Construction contends that the usual operation of the Massachusetts Rules of Civil Procedure governing discovery will not operate adequately for the presentation of the merits of its claims against DCAM. Those Rules, especially Rule 26 as the source of discovery privileges, would confer the benefit of the attorney-client protection upon DCAM. I cannot characterize confinement to the usual standards of civil litigation as an actual or threatened irreparable injury. If Suffolk Construction enjoys the merits of the dispute with DCAM, it should be able to establish that entitlement under the usual rules of discovery and evidence. In particular, the role of expert testimony and of expert discovery will usually turn out to be crucial in cases of this character. The inability to examine pre-litigation legal advice to DCAM does not appear to be an incurable deprivation.
One must remember, also, that DCAM does not enjoy an automatic exemption for every record which it characterizes as an attorney-client communication. Under the usual principles of discovery, it must still establish the accuracy of that characterization to the satisfaction of a judge or a discovery master. Some or many of its asserted items may not achieve the protection of the privilege.
III. Countervailing Harm to DCAM
If an affirmative preliminary injunction now entered so as to compel DCAM to disclose all records for which it claims attorney-client privilege, the court would be effectively awarding Suffolk Construction the ultimate relief sought by its complaint. The requested preliminary injunctive result amounts to the final relief requested by the prayers. In that event, DCAM would suffer an irreversible detriment. Its communications would be irretrievably exposed to its litigation opponent. If it were entitled to the privilege, no ruling or order could restore it. Suffolk Construction could not erase its mind of the privileged information. Consequently, the comparison of harm tends to favor DCAM at the preliminary injunction stage. Against the backdrop of a novel and important legal question upon the merits, its harm from the imposition of a preliminary injunctive order outweighs the harm to Suffolk Construction from the denial of such an order.
IV. A Public Interest
In these circumstances, both sides can claim an ostensible public interest. Suffolk Construction can invoke the purpose of the public records law, including the disclosure of governmental information to the citizenry in the absence of some overriding need for confidentiality. Conversely, DCAM can invoke the values of the attorney-client privilege for a governmental agency attempting to act effectively in the public interest with the benefit of legal assistance accorded to every private citizen and entity in comparable circumstances. I assess the public interest factor here to be a deadlock. Respectable considerations support each side. No clear advantage emerges at this time.
Conclusion
Because the merits remain arguable, because the balance of irreparable harm in light of the merits favors the defendant DCAM, and because the requested affirmative preliminary injunction would alter, rather than preserve, the status quo in these circumstances, I have denied plaintiff Suffolk Construction’s application for preliminary injunctive relief.
At the same time, the novelly and the importance of the central legal issue, as the determinant of this litigation and as a general precedent, warrants the report of a question to the appellate courts in accordance with G.L.c. 231, §111, and Mass.R.Civ.P. 64. By separate papers, I will submit that report.